**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | **CRIMINAL ACTION** |
| v. | ) ) | **NO. 17-40035-TSH** |
| **VITO NUZZOLILO,** | ) ) |  |
| **Defendant.** | ) ) |  |

## ORDER AND MEMORANDUM ON DEFENDANT'S MOTION TO SUPPRESS (Docket No. 126)

**January 7, 2019**

**HILLMAN, D.J.**

Vito Nuzzolilo ("Defendant") moves this Court to suppress the fruits of ten search warrants and three orders authorizing the interception of phone communications. He also moves for a *Franks* hearing in advance of consideration of the issues raised by his motion to suppress. For the reasons stated below, Defendant's motion (Docket No. 126) is ***denied***.

## Background

In 2016 and early 2017, Defendant is alleged to have sold large quantities of heroin and cocaine in and around Worcester, Massachusetts. He dealt the drugs from both his apartment on Grafton Street in Worcester and a basement studio on Webster Street in Worcester.

In 2016, the Drug Enforcement Administration ("DEA") began investigating the Defendant. The investigation relied on evidence derived from surveillance, car-stops, court-authorized warrants, and information provided by a confidential informant ("CS-1"). CS-1 made four controlled buys of heroin, three from the Defendant and one from the Defendant's girlfriend, Kristen Little. Agents conducted surveillance during these controlled purchases and observed

them through undercover agents present on the scene. For instance, on December 5, 2016, an agent was situated only a few feet away from the Defendant and CS-1 and observed a hand-to-hand transaction at Defendant's vehicle. In addition, agents observed text messages exchanged between CS-1 and the Defendant where CS-1 arranged to buy heroin from Defendant. Finally, agents also recorded audio and/or video of three of the four controlled buys.

After the first two controlled purchases, but before the third and fourth, agents received an unverified tip from the Worcester Police Department ("WPD") that an unnamed person at Defendant's apartment had possessed a gun. The physical description of the person matched CS-1. Further, the WPD's source indicated that the unnamed person had been at Defendant's Apartment while the source was there to purchase heroin. The source also indicated that CS-1 worked with Defendant and sold drugs on his behalf. The DEA was unable to corroborate or disprove the information but confronted CS-1 in person and reminded him/her of the obligation to refrain from such conduct. In April 2017, agents intercepted phone communications between CS-1 and Defendant that revealed CS-1's involvement in unauthorized cocaine distribution. Agents promptly brought the new evidence to the attention this Court.

Following the controlled buys, agents utilized "ping" warrants[1], search warrants for Defendant's two apartments, his vehicle, and his person, and a wiretap to intercept communications from Defendant's phone. The search warrant materials for the first two ping warrants and the first wiretap order were signed in or before April 2017 and relied on the controlled buys to establish probable cause. The materials for the final two ping warrants, the latter wiretap orders, and the physical search warrants, which were all signed in May 2017, did not. In addition, the applications that did rely on the controlled purchases to establish probable cause contained

---

[1] A "ping" warrant allows agents to gather the GPS information from a suspect's cell phone.

2

information regarding the suspected and/or established criminality of CS-1 to help the judicial officer assess his/her credibility.

For instance, in the application for the first ping warrant, the affiant noted: "Agents have received unverified information that the CS has, since the aforementioned transactions, engaged in illegal behavior—including participating in drug sales—without the knowledge or oversight of law enforcement. Agents have not confirmed the accuracy of this information." (Docket No. 142-1 ¶ 12). Similarly, the application for the second ping warrant noted:

> According to the Worcester Police Department, someone witnessed the CS in possession of a handgun in November 2016; Worcester Police also indicated that the CS was present in NUZZOLILO's apartment during at least one drug transaction. During the course of this investigation, the CS has been paid $600 (as of March 12, 2017) by the DEA for providing information. In addition, DEA communicated with the District Attorney's Office regarding the probation status of the CS, in accordance with DEA policy, and conveyed the fact that the CS was cooperating with law enforcement.

(Docket No. 142-2 ¶ 12). Finally, the first wiretap application contained identical language as the second ping warrant and additionally noted that "CS-1 has been arrested several times and convicted of felonies such as Fraud, Burglary, and Larceny, and is on probation in the Commonwealth of Massachusetts for Larceny over $250.00 until July 28, 2017." (Docket No. 142-3 ¶ 24).

### *Franks* **Standard**

A search warrant affidavit "must set forth particular facts and circumstances underlying the existence of probable cause." *Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674 (1978). When agents rely on tips from confidential informants to form the basis for probable cause, "the affidavit must recite some of the underlying circumstances from which the informant concluded that relevant evidence might be discovered, and some of the underlying circumstances from which the officer concluded that the informant . . . was credible or his information reliable." *Id.* (quotation

3

marks and citations omitted); *see also United States v. Gifford*, 727 F.3d 92, 99 (1st Cir. 2013) (Where the primary basis for a probable cause determination is information provided by a confidential informant, the affidavit must provide some information from which a magistrate can credit the informant's credibility.").

"Assuming such conditions are met, it has long been the case that '[a]n affidavit submitted in support of a search warrant application is presumed valid.'" *United States v. Graf*, 784 F.3d 1, 7 (1st Cir. 2015) (alteration in original) (quoting *United States v. Grant*, 218 F.3d 72, 77 (1st Cir. 2000). Thus, "a defendant must meet a high bar even to get a *Franks* hearing in the first place." *United States v. Tzannos*, 460 F.3d 128, 136 (1st Cir. 2006). Before conducting a *Franks* hearing, a defendant must make "two 'substantial preliminary showings': (1) that a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth; and (2) the falsehood or omission was necessary to the finding of probable cause." *United States v. Rigaud*, 684 F.3d 169, 173 (1st Cir. 2012). To meet this burden, a defendant "must prove that the affiant in fact entertained serious doubts as to the truth of the allegations. Recklessness may be inferred from circumstances evincing obvious reasons to doubt the veracity of the allegations." *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002) (quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984)).

## **Discussion**

### *1. Franks Hearing*

Undoubtedly, the foundation of a confidential informant's knowledge, and his trustworthiness, are significant factors in determining whether information in an affidavit supports a finding of probable cause. *See Illinois v. Gates*, 462 U.S. 213, 233, 103 S.Ct. 2317 (1983). Defendant contends that certain affidavits "failed to report . . . that the informant was engaged in

criminal activity of his own" and therefore did not provide the reviewing judge an opportunity to fairly evaluate CS-1's reliability. (Docket No. 126 at 2).

First, as noted above, each affidavit alleged to omit the CS-1's criminal conduct does include at least some discussion of it. Thus, the affidavits "make[] no secret of [CS-1's] criminality." *United States v. Belton*, 414 F. Supp. 2d 101, 110 (D.N.H. 2006). Those disclosures undermine the Defendant's contention that agents deliberately or recklessly omitted information. *See United States v. Colkley*, 899 F.2d 297 (4th Cir. 1990) ("*Franks* protects against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate." (emphasis in original)).

Second, even if the Government did deliberately or recklessly omit relevant evidence, Defendant would need to demonstrate that, had the affidavits contained the pertinent evidence, it would have altered the finding of probable cause. *See Rigaud*, 684 F.3d at 173 n. 5 ("There is an important difference between the necessary inquiries when the challenge is to the omission of an allegedly material fact rather than to the inclusion of an allegedly false material statement. With an omission, the inquiry is whether its inclusion in an affidavit would have led to a *negative* finding by the magistrate on probable cause." (quotation marks and citation omitted)). Here, "despite the omission of certain details"—for instance, the omission of the unverified rumors that CS-1 had sold drugs on the Defendant's behalf from the second ping warrant and first wiretap applications— the disclosures were sufficient to put the issuing judge on notice that CS-1 was not a "model citizen" when assessing his/her reliability. *Id.*; *see also United States v. Hall*, 171 F.3d 1133, 1143 (8th Cir. 1999) (concluding that omission of informant's full criminal history from warrant application was immaterial to a finding of probable cause where application cited her participation in prostitution and auto theft); *United States v. Avery*, 295 F.3d 1158, 1168 (10th Cir. 2002) ("[T]he

affidavit, though not explicitly mentioning the confidential informant's criminal history, informed the magistrate judge that the informant had used and sold cocaine in the past, thus putting the magistrate judge on notice that the confidential informant was not a model citizen and that he had previously violated laws." (quotation marks and citation omitted)).

Moreover, any omitted evidence that may have further called CS-1's reliability into question is undermined by the repeated corroboration of the evidence he/she provided agents. *See e.g.*, Docket No. 142-1 ¶ 12 n. 1. *See also Rigaud*, 684 F.3d 169, 175 ("We also agree with the district court that ample corroboration of the information that Trainor provided neutralizes any apartment untrustworthiness . . . ."); *United States v. Coplin*, 2017 WL 353998 (D. Mass. Jan. 24, 2017) ("[T]he fact that an informant has cooperated with a police investigation in a direct and closely supervised capacity (for example, in the controlled purchase or delivery of narcotics) is strong evidence of reliability.").

Finally, even if the Court were to find that the issuing judges erroneously relied on CS-1 when assessing probable cause, there was ample evidence contained in the affidavits, independent of CS-1's reliability, that could have established probable cause. For instance, in the affidavit in support of the wiretap (Docket No. 141-3) the affiant, when recounting the third controlled purchase, noted that CS-1 arranged a meeting with the Defendant on a phone call recorded by agents. Subsequently, agents observed the Defendant leave his residence and meet CS-1 at the agreed location. Agents searched CS-1 for contraband before meeting the Defendant and provided him money. An undercover agent then accompanied CS-1 in a vehicle. CS-1 was wearing a wire and observed by agents conducting a hand-to-hand transaction with the Defendant. Agents then searched CS-1 and found him in possession of 20 grams of heroine. *Id.* ¶¶ 38-39. Similar accounts are included in the other pertinent affidavits, *see, e.g.*, Docket No. 142-1, ¶¶ 17-18; Docket No.

142-2, ¶¶ 14-15, and of other controlled purchases. *See, e.g.*, Docket No. 141-3, ¶¶ 41-43. Therefore, I find that the affidavits establish probable cause apart from any questions of CS-1's reliability, which was either confirmed by the independent evidence or rendered irrelevant because of it. *See United States v. Carney*, 717 Fed.Appx. 185, 187 (3d Cir.2018) ("However, the CI's claims regarding Carney's drug dealing were also corroborated by the controlled buy at Carney's residence. The CI's credibility thus reasonably could be considered either proven or irrelevant by a magistrate. In short, even if the affidavit had contained the additional facts Carney argues were impermissibly excluded, the probable cause analysis would be no different.").[2]

Therefore, I do not find that there was a reckless omission in the relevant affidavits. Further, despite the omission of certain details, the issuing judges were aware of CS-1's potential unreliability and the evidence that he/she provided was repeatedly corroborated. Consequently, any omissions were not necessary in the sense that they would not have altered the finding of probable cause. Accordingly, Defendant has failed to meet his burden to trigger a *Franks* hearing.

## 2. Motion to Suppress

"In order for a warrant to be voided and the fruits of the search excluded, the defendant must meet an even more exacting standard [than for a *Franks* hearing]: he must (1) show that the affiant in fact made a false statement knowingly and intentionally, or with reckless disregard for the truth, (2) make this showing by a preponderance of the evidence, and (3) show in addition that

---

[2] The Defendant also argues that agents ignored information pertinent to CS-1's credibility. For instance, the Defendant notes that "CS-1 discussed 'cutting' the drugs and told the defendant to cut the drugs he was purchasing form him on 1/30/17. During the 12/6/16 conversation monitored by agents CS-1 was asked if he wanted the drugs cut. Individuals purchasing drugs do not ask that the drugs be diluted before the purchase. Rather they seek the highest quality possible. This alone should have alerted these expert narcotics agents that something was terribly amiss." (Docket No. 126 at 2 n. 1). While the Defendant might be correct, whether CS-1 wanted the drugs diluted would not have altered the probable cause analysis. The Defendant contends that the discussion of dilution shows that CS-1 was untrustworthy. The fact remains, however, that CS-1 bought drugs from the Defendant. Further, as noted above, this fact was confirmed with evidence independent of CS-1's reliability as an informant.

with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Graf*, 784 F.3d at 10-11 (alteration in original) (quoting *United States v. Tzannos*, 460 F.3d 128, 136 (1st Cir. 2006)).

As noted above, the Defendant has not made a substantial showing, let alone demonstrated by a preponderance of the evidence, that had the affidavits included the information he argues was impermissibly omitted, the probable cause analysis would have been different. Indeed, I find that the result would have been the same. As a result, the Defendant's motion to suppress must fail.

## Conclusion

For the reasons stated above, the Defendant is not entitled to a *Franks* hearing and the motion to suppress (Docket No. 126) is ***denied***.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**