UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) ) | **CRIMINAL ACTION** |
| v. | ) ) | **NO. 17-40035-TSH** |
| **VITO NUZZOLILO,** | ) ) |  |
| Defendant. | ) ) |  |

**MEMORANDUM AND ORDER ON DEFENDANT'S SUPPLEMENTAL MOTION FOR COMPASSIONATE RELEASE**
February 3, 2021

**HILLMAN, D.J.,**

### Background

Vito Nuzzolilo ("Mr. Nuzzolilo") pled guilty to conspiracy to possess with intent to distribute and distribution of heroin and cocaine in violation of 21 U.S.C. § 846 (said conspiracy involving more than 100 grams of heroin), and on May 6, 2020 was sentenced. to one-hundred thirty-four months' imprisonment followed by eight years of supervised release. He is currently incarcerated at the Federal Correctional Institute Schuylkill in Pennsylvania ("FCI Schuylkill"). As of the date of this Order, he has completed approximately one third of his sentence and is set to be released on November 26, 2026[1].

On December 28, 2020, Mr. Nuzzolilo filed a motion for compassionate release pursuant to 18 U.S.C. § 3582 (Docket No. 269) due to the ongoing pandemic and has filed multiple memoranda in support. Mr. Nuzzolilo previously contracted COVID-19 in May 2020, and while

---

[1] This projected release date assumes that Mr. Nuzzolilo receives the maximum good time credit for which he is eligible.

possible secondary contraction is one basis for his motion, his primary grounds for relief is the facility's refusal to let him use a continuous positive airway pressure ("CPAP") machine. Mr. Nuzzolilo cites the danger that COVID-19 and the refusal to allow him to use his CPAP machine poses to his health and safety. At the time Mr. Nuzzolilo filed his motion, FCI Schuylkill had 160 inmates and 13 staff members actively positive with COVID-19. As of today, circumstances have improved: FCI Schuylkill currently has 14 inmates and 14 staff members actively positive with the virus. FCI Schuylkill has not reported any deaths attributable to COVID-19. To combat the COVID-19 pandemic, administrators at FCI Schuylkill have taken a number of steps including suspending the use of CPAP machines. Mr. Nuzzolilo has been diagnosed with severe sleep apnea and uses a CPAP machine while sleeping. Mr. Nuzzolilo has also been diagnosed with type II diabetes, anxiety, high cholesterol, and obesity which places him at higher risk of serious complications should he contract COVID-19.

While the conditions vis a vis COVID-19 have improved significantly at FCI Schuylkill, the virus is not yet under control and therefore, COVID-19 protocols remain in place including denying inmates the right to use CPAP machines except under limited circumstances. The seriousness of the conditions at the facility must be balanced against the following facts: Mr. Nuzzolilo is 48 years old (which does not place his at higher risk), suffers from serious medical conditions (which place him at higher risk), has severe sleep apnea which requires him to use a CPAP machine (which if denied, can create a serious health risk) and has served only about one third of a 134-month sentence. After balancing the applicable factors discussed more fully below, I have determined that Mr. Nuzzolilo has not met his burden to show that he is entitled to release under 18 U.S.C. § 3582(c)(1)(A).

**Discussion**

Section 3582(c) begins with the general principle that a "court may not modify a term of imprisonment once it has been imposed ... ." Upon motion of the Director of the Bureau of Prisons ("BOP") or a defendant, however, a court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." *Id.* § 3582(c)(1)(A). Mr. Nuzzolilo asserts that the fact that he suffers from sleep apnea and several other medical conditions places him in a higher risk category should he again contract the virus. He further asserts that independent of the virus, sleep apnea is a medical condition which, if untreated, places him at high risk of suffering a heart attack or stroke or could even result in his death. He argues that the conditions at FCI Schuylkill constitute extraordinary and compelling reasons justifying his release. More specifically, he argues that while the conditions regarding COVID-19 have significantly improved since he filed his motion, because the virus is not yet under control, additional outbreaks can occur.[2] Mr. Nuzzolilo further asserts that FCI Schuylkill's refusal to allow him to use a CPAP machine when sleeping places him at risk of suffering a serious and even fatal medical event.

Before I address Mr. Nuzzolilo's arguments, I will briefly summarize the law as the Court has found it regarding use of CPAP machines at prison facilities during the pandemic, and at FCI Schuylkill in particular. Many prisons have prohibited the use of CPAP machines in response to the COVID-19 pandemic because of the fear that they create a risk to spread the

---

[2] At this time, it is not clear when inmates at federal correctional facilities will be offered the COVID-19 vaccine.

virus.³ *See e.g., United States of America v. Domenick Braccia,* No. 19-202, 2021 WL 322895 (E.D. Pa. Feb. 1, 2021)(FCI Fort Dix will not permit persons in COVID-19 quarantine to use CPAP machines due to concerns about spreading the virus); *United States v. Bayne,* No. 2:15-CR-127-NR, 2020 WL 6292827, at *2 (W.D. Pa. Oct. 27, 2020)(inmate ordinarily uses a CPAP machine while sleeping, but due to the risk of COVID-19 potentially being spread by using such machines, the BOP ordered him to discontinue the use of machine); *United States v. Grasha,* No. CR 18-325, 2020 WL 5747829, at *5 (W.D. Pa. Sept. 24, 2020)(CPAP machines pose a problem because they may aerosolize the COVID-19 virus); *Cox v. Daram,* No. 2:20-CV-1295 DB P, 2020 WL 4746466, at *4 (E.D. Cal. Aug. 17, 2020), *report and recommendation adopted*, No. 220CV1295KJMDBP, 2020 WL 6544259 (E.D. Cal. Nov. 6, 2020)(CPAP machines may contribute to the airborne spread of the virus and attempt to limit the use of those machines appears to recognize those risks to the prison population as a whole).  However, some prisons which have suspended the use of CPAP machines make an exception for those with severe sleep apnea whose even short-term discontinuation of the machine "would not [be] considered safe." *Cox,* 2020 WL 4746466, at *2.  One prison determined that CPAP machines could be used if the humidifier were removed, or, where the inmate suffers from mild sleep apnea, beginning after the fourteen-day period during which the prisoner is infectious. *Stanley v. Wexford Med. Servs.*, No. 3:19CV1097-PPS/MGG, 2020 WL 2129249, at *1 (N.D. Ind. May 5, 2020)(after initially suspending CPAP use, prison doctor determined that the risk to others could be minimized by removing humidifiers from the CPAP machines and therefore, offenders with more serious sleep

---

³ It is apparent from the Court's review that not all correction facilities have prohibited the use of CPAP machines in response to the pandemic. Moreover, as discussed in the main body of this Order, in general, where prions have prohibited use of the machines, they have not enacted an outright ban. Instead, they have adopted policies to permit use of the CPAP machine where the inmate suffers from sleep apnea which is serious and health threatening. Some prisons have also determined that the machine could be used with modifications or made changes to the inmate's housing situation to permit use but lessen the risk of the spreading of the virus.

apnea were permitted to begin using their CPAP machines again; offenders with only mild sleep apnea were prohibited from using their CPAP machines until the fourteen-day period (the presumptive period during which an individual with Covid-19 poses a risk of infecting others) passed.) Other prisons have prohibited the use of a CPAP machine unless the inmate is segregated from other prisoners. *See e.g., United States v. Serrano*, No. 13 CR. 58 (AKH), 2020 WL 5259571, at *3 (S.D.N.Y. Sept. 3, 2020)(due to concern that inmate's CPAP machine could make him more contagious to inmates in the event he contracts COVID-19, prison authorities have told him he must either forgo use of the CPAP machine or enter segregation); *United States v. Feiling*, Criminal No. 3:19cr112 (DJN), 2020 WL 5047064 (Aug. 26,2020)(noting that prison had offered to let inmate use CPAP machine if he agreed to go into isolation).  FCI Schuylkill's COVID-19 policy prohibits use of CPAP machines by inmates, but purports to allow those who have severe/life threatening sleep apnea to use them.

Before addressing the factors relevant to Mr. Nuzzolilo's compassionate release request, like the Government, I will assume the following facts regarding his health status:

- Mr. Nuzzolilo suffers from obstructive sleep apnea, Type II diabetes, and other serious medical conditions.

- Mr. Nuzzolilo has utilized a CPAP machine consistently for years, including while in custody on the instant charges prior to being transferred to FCI Schuylkill, *i.e.*, at Wyatt Correctional Facility and FCI Ray Brook.

- Without access to a CPAP machine, Mr. Nuzzolilo is at increased risk of cardiac arrest.

- While incarcerated at FCI Schuylkill, Mr. Nuzzolilo has not had access to a CPAP machine, resulting in his having trouble sleeping and suffering from choking, chest pains, and a rapid heartbeat. The decision by FCI Schuylkill to deny Mr. Nuzzolilo access to a CPAP machine has not been based on any medical examination of Mr. Nuzzolilo or individualized determination of Mr. Nuzzolilo's continued need for a CPAP machine, but rather was based on generalized concerns that the use of a CPAP machine could spread COVID-19.

I find that Mr. Nuzzolilo suffers from multiple medical conditions which are COVID-19 high risk factors (Type II diabetes, high cholesterol and obesity). He also suffers from severe sleep apnea. Prior to his transfer to FCI Schuylkill, he was permitted to use his CPAP machine at two facilities who are either run by or contracted with the Bureau of Prisons. Without having conducted any meaningful examination (or any examination at all) or sleep study, medical personnel at FCI Schuylkill made a finding that Mr. Nuzzolilo suffers only from a mild form of sleep apnea and, as a result, he has been denied use of his CPAP machine while pandemic protocols remain in place. Given the amount of time that has passed since he contracted COVID-19 and the unknowns surrounding new variants which have been discovered, Mr. Nuzzolilo remains at risk of exposure to the virus. While FCI Schyulkill has undertaken extensive measures to protect its inmates, recent statistics show that, despite a facility's best efforts, the virus can appear suddenly and spread quickly in the prison population. Moreover, Mr. Nuzzolilo's sleep apnea creates an independent serious health risk given the prison's unwillingness to allow him to use a CPAP machine.[4]

Considering the current and potential prospective impact of the pandemic and FCI Schuylkill's unwillingness to address his serious medical needs regarding his sleep apnea, the individualized assessment of relevant factors as they pertain to Mr. Nuzzolilo establish that: (1) he suffers from health conditions (Type II diabetes, high cholesterol and obesity) which place him at higher risk of serious illness or death should he again contract COVID-19, and from

---

[4] It is not clear to me from the record whether FCI Schuylkill has offered to allow Mr. Nuzzolilo to use the CPAP machine if he agrees to be housed in isolation. It is also unclear whether FCI Schuylkill has or is willing explore whether modifying the CPAP machine in some way could alleviate concerns about possible spread of the virus should Mr. Nuzzolilo contract it again. Both parties agree that this Court does not have jurisdiction to order FCI Schuylkill to permit Mr. Nuzzolilo to use his CPAP machine, or to even order that generally recognized medical examinations and tests be conducted to determine whether his sleep apnea is sufficiently severe to merit use of his CPAP machine in accordance with the prison's own policies. However, Mr. Nuzzolilo is not without remedy: Should FCI Schyulkill continue to deny Mr. Nuzzolilo use of his CPAP machine, he can bring a civil action for injunctive and monetary relief against the appropriate agency as well as the prison's administrative and medical staff.

severe sleep apnea which places him at high risk or serious illness or death if not properly treated; and (2) the health, safety, and living conditions at the facility where he is housed, including the specific steps taken by the facility in response to the spread of COVID-19 (which include prohibiting his use of a CPAP machine) constitute extraordinary and compelling reasons for a reduction of his sentence under § 3582(c)(1)(A). However, this does not end the inquiry, I must also consider "the factors set forth in section 3553(a) to the extent they are applicable" and determine whether release would be consistent with such factors.

I find it *very* significant that Mr. Nuzzolilo was only sentenced this past May and still has a significant amount of time still to serve on his 134-month sentence. Moreover, I find that Mr. Nuzzolilo would pose a significant danger to the public if released: he is a drug dealer who upon release from prior convictions has returned to the drug trade.[5] Counsel for Mr. Nuzzolilo points out that his underlying conviction did not involve weapons and that he is not a violent criminal while downplaying the threats of violence made by Mr. Nuzzolilo while conducting his drug business. The Court, however, is not as quick to write off conduct which blatantly contradicts Mr. Nuzzolilo's contention that he is not a danger to the community. Having carefully considered all of the § 3553(a) factors. I find that Mr. Nuzzolilo's "history and characteristics" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, ... to provide just punishment for the offense[, and] to afford adequate deterrence to criminal conduct," on balance do not justify a sentence reduction. Accordingly, his motion for compassionate release is *denied.*

---

[5] Mr. Nuzzolilo represents that he would be willing to subjected to home confinement *for the remainder of his sentence*. Additionally, he requests that his conditions of supervised release be modified to permit him to live the same residence as his fiancé who is a convicted felon. Given Mr. Nuzzolilo's prior criminal record and the nature of his offense, I do not find that his suggested conditions to be practical or sufficient to justify release under §3553.

## Conclusion

Defendant's Motion To Modify Sentence Of Imprisonment Pursuant To 18 U.S.C. 3582(C)(1)(A)(Docket No. 269) is ___*denied*___.

**SO ORDERED**

                                                  ___*/s/ Timothy S. Hillman*___
                                                  **Timothy S. Hillman**
                                                  **UNITED STATES DISTRICT JUDGE**